# The Attorney General's Duty to Defend the Constitutionality of Statutes

The Department of Justice has a duty to defend the constitutionality of an Act of Congress whenever a reasonable argument can be made in its support, even if the Attorney General concludes that the argument may ultimately be unsuccessful in the courts. The statute at issue in the instant case could be held constitutional as applied in certain situations, and accordingly the Department will defend it.

April 6, 1981

HONORABLE STROM THURMOND
CHAIRMAN
COMMITTEE ON THE JUDICIARY
UNITED STATES SENATE
WASHINGTON, D.C. 20510

HONORABLE JOSEPH R. BIDEN, JR.
COMMITTEE ON THE JUDICIARY
UNITED STATES SENATE
WASHINGTON, D.C. 20510

DEAR MR. CHAIRMAN AND SENATOR BIDEN: I am pleased to respond to your letter of February 3, 1981, requesting that I reconsider the decision of the Department of Justice not to defend the constitutionality of 47 U.S.C. § 399(a) in the case of *League of Women Voters* v. *FCC,* No. 80-5333 (9th Circuit).* Please forgive the delay in responding, but we have undertaken a thorough review of the question. I have determined that the Department will participate in the litigation and defend the statute.

The Department appropriately refuses to defend an act of Congress only in the rare case when the statute either infringes on the constitutional power of the Executive or when prior precedent overwhelmingly indicates that the statute is invalid. In my view, the Department has the duty to defend an act of Congress whenever a reasonable argument can be made in its support, even if the Attorney General and the lawyers

---

*NOTE· The Department of Justice's decision not to defend the constitutionality of § 399 had been conveyed to Congress in an October 11, 1979, letter from Attorney General Civiletti to Senate Majority Leader Byrd. Ed.

examining the case conclude that the argument may ultimately be unsuccessful in the courts.

The prior decision not to defend § 399(a) was made by virtue of the conclusion that no reasonable defense of the constitutionality of this provision as a whole could be made. Under applicable Supreme Court precedent, however, even a statute that could have some impermissible applications will not be declared unconstitutional as a whole unless the provision is substantially overbroad and no limiting construction of the language of the statute is possible. Here, for example, the statute's application to political endorsements by government-owned broadcasters might well be held by a court to be constitutional. In that event, the fact that the statute permissibly could be applied in some instances may be sufficient to preclude a finding that the provision as a whole is unconstitutional.

Accordingly, we will advise the Ninth Circuit of our position and request that the case be remanded to the district court to allow us to present our defense.**

Sincerely,
WILLIAM FRENCH SMITH

---

**NOTE· Pursuant to the government's request, the case was remanded by the court of appeals to the district court, whose judgment, holding § 399's ban on editorializing by noncommerical stations unconstitutional, was ultimately affirmed by the Supreme Court. *FCC* v. *League of Women Voters of California,* —— U.S. ——, 104 S. Ct. 3106 (1984), *aff'g* 547 F. Supp. 379 (C.D. Cal. 1982). Section 399's separate ban on political endorsements by noncommercial stations was by then no longer at issue in the case, and the Supreme Court "express[ed] no view" on the constitutionality of that provision. 104 S. Ct. at 3113, n 9. Ed.